(121 App. Div. 581.)

In re WRIGHT.

(Supreme Court, Appellate Division, Second Department. October 23, 1907.)

**1. GIFTS—INTER VIVOS—SUFFICIENCY OF EVIDENCE.**

When a gift inter vivos is not asserted until after the death of the alleged donor, the evidence must be as cogent as in the case of a gift causa mortis, and therefore clear, convincing, strong, and satisfactory.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, § 95.]

**2. SAME.**

Evidence on the final accounting of an executor examined, and *held* insufficient to show that the testator by word of mouth gave an oyster lot to the executor, and hence the executor must account for the money received from the sale of the use of the lot.

**3. EXECUTORS—PROCEEDINGS FOR ACCOUNTING—COUNSEL FEES AND COSTS.**

Upon the final accounting of an executor, the costs and allowances should be made to the parties, and not to their attorneys or counsel.

[Ed: Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 2266.]

Appeal from Surrogate's Court, Richmond County.

Final accounting of Garrett P. Wright, executor of the last will and testament of Garrett P. Wright, deceased. From a decree charging him with moneys received from the sale of an oyster lot, the executor appeals. Modified and affirmed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

Charles Adkins Baker (Herman Aaron, on the brief), for appellant.

P. A. Hargous, for respondents.

JENKS, J. This is an accounting by an executor. The executor contends that the decree is wrong, in that it charges him with moneys received upon the sale of an oyster lot; i. e., the franchise to plant and to cultivate oysters in a certain specified territory. He asserts that his testator during his lifetime gave this lot to him. The testator and this executor were father and son, and had been for a time in partnership as oystermen, owning certain chattels and several oyster lots. The executor testifies that this lot was given to him by word of mouth, and that thereafter he planted it for one year. He is corroborated by his son alone, who was secretary to the grandfather, and who testifies that soon after the firm was dissolved the grandfather declared to him several times that he had made this gift.

Although in the nature of things such testimony stands not directly contradicted, it appears that other transfers of similar property and of other property from father to son were by writings. No reason is suggested why such course was not followed in the instance of this lot. The transfer by the executor, for which he is charged in this decree, was by conveyance subscribed by him, and by him with the addition "Ex." When a gift inter vivos is not asserted until after the death of the alleged donor, the evidence must be as cogent as in the case of a gift causa mortis (Matter of Manhardt, 17 App. Div. 1, 44 N. Y. Supp. 836), and so it must be clear, convincing, strong, and

satisfactory (Lewis v. Merritt, 113 N. Y. 386, 21 N. E. 141; Bray v.
O'Rourke, 89 App. Div. 400, 85 N. Y. Supp. 907). I think that the
evidence is not of this degree, so as to warrant us in disturbing the
finding of the learned surrogate to the contrary. The costs and al-
lowances should be made to the parties, and not to their attorneys or
counsel. Matter of Welling, 51 App. Div. 357, 64 N. Y. Supp. 1025,
and authorities cited.

I think that the costs and disbursements allowed to Peter C. Har-
gons in said decree should be reduced to $99.39 and be made payable
to Charles H. Campbell, the respondent on this appeal, and the costs
allowed to Mersereau and the West End Coal Company should be re-
duced to $10 each, and that, as thus modified, the said decree be affirm-
ed, without costs. All concur.